No. 457

First Circuit

CRUMP v. LA. RY. & NAV. CO.

(June 10, 1929. Opinion and Decree.)

E. S. Muse, of St. Francisville, attorney for plaintiff, appellee.

H. H. Kilbourne and Jas. H. Kilbourne, of St. Francisville, attorneys for defendant, appellant.

Chas. A. Holcombe, of Baton Rouge, attorney for Town of St. Francisville, intervener, appellee.

LECHE, J. Steve Crump, while employed as a laborer, was digging up a water main along the edge of a fifteen foot trestle upon which rested the tracks of the Louisiana Railway & Navigation Company, in the town of St. Francisville, in order to raise and salvage the cast iron pipe which was about three feet under the ground, when a carload of earth was dumped over him from a railroad car. He was buried under the dirt, suffocated, and died before he could be extricated from his perilous position.

This suit is on behalf of Crump's widow and his minor children, for their own benefit, and for the benefit of the town of St. Francisville as subrogee under the Employer's Liability Act (Act No. 20 of 1914, as amended).

Steve Crump was in the employ of the town of St. Francisville at the time he was killed. He had frequently worked for the municipality, was a laborer and somewhat of a mechanic. He had a good deal of experience as a plumber and pipe fitter. He was thoroughly familiar with the water-work system of the town, in the repair of which he had been frequently engaged. When it became necessary to dig and take

up a water main extending along a trestle which spanned a street, part of a state public highway, inside the corporate limits of St. Francisville, he was engaged to do the work. The railroad company, defendant, was interested in filling up the roadway or street which passed under the trestle and the municipality was also interested in filling up this opening in order to keep water out of the low places on the edge of the town during high stages of the river. There was concert of action on the part of the town and of the railroad company. The question of filling this gap had previously and often been discussed between the town authorities and the agents of the railroad company, and each knew what the other was doing. The pipe had originally been placed along this street to supply the railroad company's depot and water tank with water, though at the time of the accident in which Crump lost his life, the railroad had ceased to use water from the municipality's waterworks.

The pipe was on the north side of the trestle which as before stated, was about fifteen feet in height. During the month of April, 1928, the railroad company began to haul dirt on its cars and dumped the dirt on the south side of the trestle, though through some mistake or misunderstanding one carload of dirt was dumped on the north side. The next day the railroad company, knowing that the town had to or was about to dig up the pipe over which it had inadvertently dumped one carload of dirt, had the same removed by teams and scrapers so that the municipal authorities could get to the underground pipe and remove it. As soon as this earth was removed, Crump and two other laborers of the town started to dig a trench to get to the pipe and uncover it before they could raise it out of the ground. It was while Crump was engaged in these operations of disconnecting and raising the underground pipe that he was buried by a carload of dirt dumped from a railroad car just above him. The railroad company had already brought one or two trainloads of dirt which had all been dumped on the south side of the track. The train had brought its third load at about 11:30 o'clock, and the cars were each spotted over the trestle and the dirt unloaded on the south side, when one carload was inadvertently dumped on the north side immediately over Crump who was stooping down in the trench removing mud from around the pipe. There was another laborer near Crump and he was partly covered, but was pulled out without getting hurt. Crump, however, was completely deluged and he suffocated before he could be rescued.

The cars on which the dirt was carried are equipped with trap bottoms or sides, which are moved by means of levers. The cars may be emptied from either side. The brakeman who operated the traps, knew by the position of the levers which side of the car to open and on which side of the track the dirt was to be dumped, but he says that he made a mistake and opened the wrong side, and thus caused the death of Crump with an avalanche of dirt, falling from a height of over fifteen feet.

The question in the case is whether the defendant railroad company was guilty of negligence. A mere recital of the facts as we have attempted to relate them and as we understand them, is convincing of the fact that defendant was negligent. The railroad company and its train crew knew the nature of the work which the town was doing; the crew had on previous trips seen the town laborers engaged in digging the water pipe out of the ground, and both the conductor of the train and the brakeman saw, or could see, and should have seen the laborers and employees of

the town at work, from their respective positions.

Defendant also contends that Crump was guilty of contributory negligence. We do not think that he was. Crump was working in a perfectly safe position and had no reason to expect that the brakeman operating the dirt car would make a mistake and dump a carload of dirt over him. The railroad company's crew had previously made the mistake of dumping a carload of dirt on the north side of the track, and with this error fresh in their minds, an error which cost the railroad company delay and expense, Crump had every reason to believe that the mistake would not occur a second time. We are decidedly of the opinion that the defendant was at fault and that it is liable.

At the time of his death Crump was about sixty years of age. His earning capacity is said to have been from fifty to sixty dollars per month. The jury assessed the damages at seven thousand two hundred dollars. We believe this amount is somewhat excessive and should be reduced to five thousand two hundred dollars.

For these reasons the judgment appealed from is amended and reduced to five thousand two hundred dollars, and as thus amended, said judgment is affirmed in all other respects; costs of appeal to be paid by plaintiff and appellee.